UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAVID MONTALVO, on behalf of Himself, )<br>and All Others Similarly Situated, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>TRIPOS, INC., JOHN P. MCALISTER, )<br>B. JAMES RUBIN, and )<br>ERNST & YOUNG, L.L.P., )<br>)<br>Defendants. ) | Case No. 4:03CV995SNL |

## **MEMORANDUM**

Lead plaintiffs have filed this second amended complaint on behalf of purchasers of Tripos common stock between February 9, 2000 and July 2, 2002, inclusive. They assert violations of Section 10-b of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder (Count I - all defendants) and Section 20(a) of the Securities Exchange Act of 1934 (Count II - individual defendants only). This matter is before the Court on defendant Ernst & Young's (hereinafter referred to as "E&Y) motion to dismiss (#53), filed August 3, 2004. Over an extended period of time, the parties have filed lengthy and extensive responsive pleadings and the matter is now ripe for disposition.

Defendant E&Y seeks to dismiss this second amended complaint for failure to state a claim under Rule 12(b)(6) Fed.R.Civ.P., in connection with the "heightened pleading requirements" of Rule 9(b) Fed.R.Civ.P. and the Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. §78u-4. Defendant E&Y generally aver that the plaintiffs have failed to identify "specific or highly suspicious facts" that E&Y knew or recklessly disregarded, at the time

it issued it's audit opinions, which would have alerted E&Y to the fact that the subject Tripos financial statements were materially misstated.

The second amended complaint generally consists of two (2) primary claims: Firstly, that the defendants made or participated in making false and/or misleading statements leading to a "scheme to defraud" or course of conduct designed to operate as a fraud or deceit upon plaintiffs as investors between February 2000 and July 2002. They contend that defendants knew of certain events, including but not limited to, a lost software contract and improper accounting methods, which when eventually disclosed, caused a significant drop in the stock value. Lead Plaintiffs allege that despite knowledge of the negative events and accounting irregularities, defendants continued throughout 2001 to forecast extremely positive revenues for defendant Tripos in order to encourage the "investors class" to purchase the Company's securities; and that the "investors class" relied on these false forecasts in making such purchases. Secondly, that defendant Ernst & Young, as outside auditor and accountant for Tripos, while performing audits:

> "falsely represented that it performed these audits in accordance with Generally Accepted Auditing Standards (GAAS) and issued materially false and misleading unqualified audit opinions as to those financial statements during the Class Period, claiming that the financial statements were prepared and presented in accordance with Generally Accepted Accounting Principles (GAAP). Additionally, E&Y consented to the use of its unqualified opinion letters for Tripos' financial statements contained in the Company's respective Form 1-Ks for fiscal 1999, 2000, and 2001.. E&Y also prepared and assisted Tripos in issuing the Company's materially false and misleading Form 10-Qs during the Class Period."

Second Amended Complaint (#31), filed May 5, 2004; pg. 6, ¶18.

In passing on a motion to dismiss, a court must view the facts alleged in the complaint in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232 (1974); Conley v. Gibson, 355 U.S. 41, 45-46(1957); Toombs v. Bell, 798 F.2d 297, 298 (8th Cir. 1986). The court must accept

the allegations in the complaint as true and draw reasonable inferences in favor of the nonmoving party, dismissing the complaint only if "it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, *supra*, 355 U.S. at 45-46; *see also*, Moses.com Securities v. Comprehensive Software Systems, Inc., 406 F.3d. 1052, 1062 (8th Cir. 2005). "Although the pleading standard is liberal, the plaintiff must allege facts -- not mere legal conclusions -- that, if true, would support the existence of the claimed torts. Moses.com, at 1062 *citing* Schaller Tel.Co. v. Golden Sky Sys., 298 F.3d. 736, 740 (8th Cir. 2002). In viewing the complaint in the light most favorable to the plaintiff, the court should not dismiss it merely because the court doubts that the plaintiff will be able to prove all of the necessary allegations. Bennett v. Berg, 685 F.2d. 1053, 1058 (8th Cir. 1982). Thus, a motion to dismiss is likely to be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982).

## Federal Securities Law - Section 10(b) and Rule 10b-5

Plaintiffs allege violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5. Section 10(b) and Rule 10b-5 prohibit fraudulent conduct in the sale and purchase of securities. Section 10(b) forbids (1) the "use or employ[ment] . . . of any . . . deceptive device," (2) "in connection with the purchase or sale of any security," and (3) "in contravention of" Securities and Exchange Commission "rules and regulations". Dura Pharmaceuticals v. Broudo, - U.S. -, 125 S.Ct. 1627, 1630-31 (2005) *citing* 15 U.S.C. §78j(b); *see,* Ferris, Baker Watts, Inc. v. Ernst & Young, L.L.P., 395 F.3d. 851, 853-54 (8th Cir. 2005); In re: K-Tel International, Inc. Securities Litigation, 300 F.3d. 881, 888 (8th Cir. 2002); In re: Navarre Corp. Securities Litigation, 299 F.3d. 735, 741 (8th Cir. 2002). Rule 10b-5 forbids, among other things, the making of any "untrue statement of

material fact" or the omission of any material fact "necessary in order to make the statements made . . . not misleading." Dura Pharmaceuticals, 125 S.Ct. at 1631 *citing* 17 C.F.R. §240.10b-5 (2004).

Private securities fraud actions brought under Section 10(b) and Rule 10b-5 require the pleading and showing of these elements: 1) a material misrepresentation or omission; 2) scienter (a wrongful state of mind); 3) a connection with the purchase or sale of a security; 4) reliance or "transaction causation"; 5) economic loss; and 6) "loss causation" or a causal connection between the material misrepresentation and the loss. Dura Pharmaceuticals, 125 S.Ct. at 1631; *see* Ferris, Baker Watts, at 854; K-tel, at 888; Navarre, at 741. Since Section 10(b) and Rule 10b-5 actions are grounded in fraud, the more stringent pleading standards of Rule 9(b) Fed.R.Civ.P. are applicable. In re: Nationsmart Corp. Securities Litigation, 130 F.3d. 309, 320 (8th Cir. 1997); In re: BankAmerica Corp. Securities Litigation, 78 F.Supp.2d. 976, 987 (E.D.Mo. 1999); Jakobe v. Rawlings Sporting Goods Co., 943 F.Supp. 1143, 1152 (E.D.Mo. 1996).

Pursuant to Rule 9(b) Fed.R.Civ.P., all allegations of fraud must be stated with particularity. To meet the requirements of Rule 9(b), a pleading must include "such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." Bennett v. Berg, 685 F.2d. 1053, 1062 (8th Cir. 1982); *see also*, Wiley v. Mitchell, et. al. 106 Fed.Appx. 517, 521-22 (8th Cir. 2004)(unpublished). Compliance with the particularity requirements of Rule 9 requires plaintiffs to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." In re BankAmerica Corp. Securities Litigation, 78 F.Supp.2d. 976, 987 (E.D.Mo. 1999)(citation omitted). "[C]onclusionary allegations that a

defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Commercial Prop.Inv., Inc. v. Quality Inn Int'l, Inc., 61 F.3d. 639, 644 (8th Cir. 1995).

The Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. §78u-4, embodies the pleading requirements of Rule 9 Fed.R.Civ.P. Ferris, Baker Watts, at 854; K-tel, at 889; *see* Navarre, at 742 (given that the PSLRA embodies the pleading requirements of Rule 9, plaintiffs do not need to meet the requirements of both, and the PSLRA supercedes; i.e. under Rule 9 state of mind can be averred generally; however, under the PSLRA, both falsity and scienter must be pleaded with particularity). Complaints brought under Section 10(b) and Rule10b-5 are governed by special heightened pleading standards adopted by Congress in the PSLRA. These heightened pleading standards are unique to securities actions and were adopted by Congress in an attempt to curb abuses of securities fraud litigation. Kushner v. Beverly Enterprises, 317 F.3d. 820, 826 (8th Cir. 2003) *citing* Navarre, at 741; *see* Amdocs, at 547 *citing* Navarre, at 741.

The PSLRA requires plaintiffs "to specify each misleading statement or omission and specify why the statement or omission was misleading." Kushner, at 826; Navarre, at 741-42; 15 U.S.C. §78u-4(b)(1). The complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Kushner, at 826; Navarre, at 741-42; 15 U.S.C. §78u-4(b)(2); *see* Ferris, Baker Watts, at 854; K-tel, at 889. The Act requires that the allegations collectively establish a strong inference of the required state of mind. Kushner, at 826. Any complaint failing to meet these pleading requirements must be dismissed. Kushner, at 826; In re: BankAmerica Corp. Securities Litigation, at 988; 15 U.S.C. §78u-4(b)(3)(A). Finally, the Reform Act requires the courts to disregard "catch-all" or "blanket" assertions that do not live up to the particularity requirements. Ferris, Baker Watts, at 853; Amdocs, at 547; K-tel, at 889; Kushner, at 824; Florida State Bd. of Admin. v. Green Tree, 270 F.3d. 645, 660 (8th Cir. 2001).

The Eighth Circuit has established a three-prong formula for assessing the adequacy of scienter allegations. After reviewing the tests promulgated by the other circuits to meet the Reform Act's "strong inference of scienter" standard, the appellate court fashioned its own criteria for indicia of fraud:

> "Therefore, we can say three things about motive and opportunity allegations. First, motive and opportunity are generally relevant to a fraud case, and a showing of unusual or heightened motive will often form an important part of a complaint that meets the Reform Act standard. Second, in some cases the same circumstantial allegations that establish motive and opportunity also give additional reason to believe the defendant's misrepresentation was knowing or reckless. For instance, in insider trading cases, the timing of trades shows motive and opportunity, but it may also provide additional circumstantial evidence that the defendant knew of an advantage. Such allegations may meet the Reform Act standard, but if so it is because they give rise to a strong inference of scienter, not merely because they establish motive and opportunity. Third, when the complaint does not show motive and opportunity of any sort - either the unusual, heightened motive highlighted in the Second Circuit cases, or even an everyday motive such as keeping one's job - then other allegations tending to show scienter would have to be particularly strong in order to meet the Reform Act standard."

Florida State Bd. of Admin. v. Green Tree, at 660.

Mere negligence does not violate federal securities law; however, severe recklessness may. Ferris, Baker Watts, at 854 (citations omitted).

> "Specifically, scienter may be demonstrated by severe recklessness involving `highly unreasonable omissions or misrepresentations' amounting to `an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.' Recklessness, then, may be shown where unreasonable statements are made and the danger of misleading investors is so obvious that the defendant must have been aware of it."

Kushner, at 828 *citing* K & S P'ship v. Cont'l Bank, N.A., 952 f.2d. 971, 978 (8th Cir. 1991); *see also*, Ferris, Watts Baker, at 854. "This level of recklessness requires that defendants make

statements that they know, or have access to information suggesting, are materially inaccurate." Ferris, Baker Watts, at 854 *citing* Navarre, at 746.

Plaintiffs contend that Tripos and the individual defendants improperly recognized revenue throughout the Class Period in violation of certain GAAP.[1] Plaintiffs further allege that not only did these defendants use improper accounting practices in violation of GAAP, they also issued false and misleading financial statements which inflated Tripos' reported revenues, net income and earning per share while concealing certain business setbacks from current and prospective investors. Plaintiffs further contend that defendant E&Y falsely represented that Tripos' financial statements (during the Class Period) were accurate and in accord with GAAP[2], and that these financial statements had been audited by defendant E&Y in conformance with GAAS[3]. Plaintiffs contend that defendant E&Y "[w]ith knowledge of Tripos' true financial condition, or in reckless disregard thereof, [E&Y] certified the materially false and misleading financial statements of Tripos . . . and provided unqualified Independent Auditors' Reports, which were included in the SEC filings and publicly disseminated statements." Plaintiffs' Second Am. Complaint ¶234. To support this allegation of actual knowledge and/or recklessness, plaintiffs allege that "E&Y's personnel were regularly present at Tripos and had intimate knowledge of Tripos' financial reporting practices based on its access to confidential internal corporate, financial, operating and business information". Plaintiffs' Second Am. Complaint ¶235. Plaintiffs contend that defendant E&Y violated GAAS, and that if it hadn't, E&Y would have seen that the financial statements did not comport with GAAP. Plaintiffs' Second Am.

---

[1]The Court has reviewed with greater specificity the claims asserted against Tripos and the individual defendants in a companion order and memorandum which addresses those defendants' motion to dismiss.

[2]Generally Accepted Accounting Principles.

[3]Generally Accepted Accounting Standards.

Complaint ¶¶238-242. Plaintiffs contend that defendant E&Y "turned a blind eye" to "numerous `red flags' which should have raised questions in the auditors' minds and led them to procure additional evidential matter." Plaintiffs' Second Am. Complaint ¶243. Plaintiffs contend that defendant E&Y had a duty to comply with GAAS and that it breached that duty in a variety of ways. Plaintiffs' Second Amended Complaint ¶¶252-260.

In their responsive brief, plaintiffs attempt to elaborate on the "red flags" that defendant E&Y allegedly "turned a blind eye" to when issuing its audit reports. The first "red flag" is the nature of Tripos' business. Plaintiffs contend that as a small company with a large part of its business derived from a small number of sources, defendant E&Y "[a]s the auditor for such a company, E&Y was obligated to discover and determine the appropriateness of the manner in which Tripos accounted for its revenue from such major sources of the Company's business." Plaintiffs' Brief in Opposition (#64), pg. 56. The second "red flag" regards the style of Tripos' executive management in that senior management exhibited a "domineering and aggressive" management style that triggered a "high-pressure" working atmosphere. This type of management style, coupled with the fact that senior managers had little experience in accounting and business, should have "triggered a higher degree of vigilance on the part of the Company's auditors to ascertain how revenues were recorded and whether numbers reflected properly recorded revenues." Plaintiffs' Brief in Opp. (#64), pgs. 56-57. The third "red flag" has to do with the 2004 restatement in which Tripos conceded that its earlier financial statements were based on an erroneous application of GAAP[4]. Plaintiffs contend that defendant E&Y was reckless because E&Y could not have obtained "sufficient competent evidential

---

[4]The gist of this contention is that Tripos elected to view its pricing of perpetual licensing agreements and associated PCS services as a basis for allocating the price paid for the same products when they were sold on a bundled basis. Later, it concluded that this pricing method did not constitue VSOE (Vendor Specific Objective Evidence) of fair value.

-8-

matter for its opinion" that supported the recognition of revenue on time-based software licenses. Plaintiffs argue that since Tripos has admitted that it didn't have sufficient VSOE of fair value, then "VSOE did not exist" and defendant E&Y could not have conducted a proper audit, for if it had, it would have discovered the lack of VSOE. Plaintiffs' Second Am. Complaint ¶¶245-47; Plaintiffs' Response in Opp., pgs. 57-59.

Finally, plaintiffs contend that, under the completed contract method of accounting, Tripos should have recognized losses on its consulting contracts at an earlier point in time. Plaintiffs contend that the losses Tripos took in 2002 were apparent by the end of 2001, and that if E&Y had conducted a proper auditing investigation, it would have seen that Tripos' financial statements were materially misstated.

"Allegations of GAAP violations are insufficient, standing alone, to raise an inference of scienter. Only where those allegations are coupled with evidence of corresponding fraudulent intent might they be sufficient." Ferris, Baker Watts, at 855 *aff'g* Ferris, Baker Watts v. Ernst & Young, 293 F.Supp.2d. 1003, 1007-8 (D.Minn. 2003); Navarre, at 745. "[T]o allege that an independent accountant or auditor acted with scienter, the complaint must identify specific, highly suspicious facts and circumstances available to the auditor at the time or the audit and allege that these facts were ignored, either deliberately or recklessly." In re: Rural Cellular Corp. Securities Litig., 2004 WL 1278725 (D.Minn. June 6, 2004)[5]*quoting* PR Diamonds, Inc. v. Chandler, 364 F.3d. 671, 694 (6th Cir. 2004)(internal citations omitted).

Plaintiffs' allegations against defendant E&Y fail to support a strong inference of scienter. Assuming GAAP and GAAS violation did occur, at best, all the plaintiffs have alleged is negligence

---

[5]Although it is not the Court's ordinary practice to cite to unpublished decisions, this decision in particular provided helpful analysis and was cited by the parties.

on the part of defendant E&Y. Plaintiffs have alleged that defendant E&Y had "access" to internal Tripos data and that Tripos' management style and nature of business "should have" alerted E&Y to the alleged falsity of Tripos' financial statements. These are allegations of negligence; not identification of facts giving rise to deliberate intent or reckless conduct to defraud. Furthermore, no facts are given as to why E&Y's "presence" at Tripos provided the "access" to any particular data that would have been highly suspicious in connection with Tripos' financial statements. Finally, no facts are given as to how the "well-known" knowledge of business problems by Tripos' employees was imputed to defendant E&Y or why a later omission of accounting error by the Company provides evidence of earlier fraud by E&Y at the time of the audits. This is a classic case of "fraud by hindsight" pleading which has been rejected by the Eighth Circuit. K-Tel, at 893. Plaintiffs allege poor auditing, even negligent auditing, not the intent to deceive, manipulate, or defraud as required for securities fraud.

Given the above findings of the Court, and its ultimate determination to grant defendant E&Y's motion to dismiss, the Court finds no need to address defendant's supplemental grounds for dismissal (failure to properly plead loss causation pursuant to Dura Pharmaceuticals, *supra.*).

Dated this   30th   day of September, 2005.

_____
SENIOR UNITED STATES DISTRICT JUDGE